**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon Skywalk Development, LLC, a Nevada Limited Liability Company, | No. CV-13-08054-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| The Hualapai Indian Tribe of Arizona, et al., | |
| Defendants. | |

Defendants Hualapai Indian Tribe and seven named members of the Hualapai Tribal Council have filed a motion to dismiss Plaintiff Grand Canyon Skywalk Development, LLC's ("GCSD") first amended complaint to compel arbitration. Doc. 19; *see* Doc. 18. The motion has been fully briefed. Docs. 21, 29. Defendants also have filed a motion to disqualify Greenberg Traurig ("GT") as counsel for GCSD and for related orders protecting the Tribe's confidential information. Doc. 25. GT has filed a response in opposition which GCSD joined. Docs. 43, 37. For the reasons that follow, the Court will grant Defendants' motion to dismiss GCSD's first amended complaint, and deny Defendant's motion to disqualify GCSD's counsel and for related orders.[1]

///

---

[1] Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I.     Background.

The following facts are taken from GCSD's complaint, which the Court takes as true at the pleading stage, and the Court's orders in three prior actions.[2]

This action arises from the Hualapai Indian Tribe's February 2012 taking through eminent domain of GCSD's contract rights to operate the Skywalk and related facilities at the South rim of the Grand Canyon on the Hualapai Indian Reservation.  The Skywalk began as a joint revenue-sharing venture between GCSD, a Nevada-based limited liability corporation, and 'Sa' Nyu Wa, Inc. ("SNW"), a tribally-chartered corporation of the Hualapai Tribe.

On December 31, 2003, GCSD and SNW entered into a Development and Management Agreement ("the 2003 Agreement") governing the planning, construction, and management of the Skywalk.  GCSD alleges that it thereafter paid approximately $30 million for the construction of the Skywalk.  Doc. 18, ¶ 24.  The Skywalk opened to visitors on March 28, 2007, with GCSD in charge of operating the facilities and SNW in charge of maintaining the books and records.  *Id.*, ¶ 25.  GCSD alleges that SNW breached material terms of the 2003 Agreement almost immediately after the Skywalk opened.  *Id.*

On February 25, 2011, after the parties failed to resolve their disputes through negotiation, GCSD filed an action to compel arbitration against SNW in Hualapai Tribal Court.  The Tribal Court found that it lacked jurisdiction to compel arbitration under the terms of the 2003 Agreement.  *Id.*, ¶ 27.  GCSD then filed a complaint in arbitration with the American Arbitration Association, seeking to arbitrate alleged outstanding management fees and other issues, and SNW responded by filing 19 counterclaims.  *Id.*, ¶¶ 28-29.  SNW paid arbitration fees and participated in the initial discovery portion of

---

[2] *Grand Canyon Skywalk Dev., LLC v. Vaughn*, No. 3:11-cv-08048-DGC, Docs. 33, 39; *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa*, No. 3:12-cv-08030-DGC, Docs. 32, 58; *Grand Canyon Skywalk Dev., Co. v. 'Sa' Nyu Wa, Inc.*, No. 3:12-cv-08183-DGC, Doc. 22.

- 2 -

the arbitration.  *Id.*, ¶ 29.

In February of 2012, the Hualapai Tribe filed an action in Tribal Court purportedly taking GCSD's past and future contract rights.  *Id.*, ¶ 30.  Counsel for the Tribe then announced that the Tribe had stepped into the shoes of GCSD for purposes of the 2003 Agreement and the ongoing arbitration, and was terminating the arbitration.  *Id.*, ¶ 31.  Arbitrator Shawn Aiken ruled that the parties to the arbitration remained GCSD and SNW and that the Tribe had not intervened and was without authority to terminate the arbitration.  Mr. Aiken nonetheless stayed the arbitration hearing to give SNW and the Tribe an opportunity to obtain an order from either federal or tribal court enjoining the arbitration.  SNW and the Tribe sought such an injunction in Tribal Court, but the court declined to enjoin the arbitration.   The arbitration continued without SNW's participation, and the arbitrator found in favor of GCSD and against SNW on all claims.

The arbitrator entered an award of $28.5 million in damages against SNW on August 16, 2012, and, on February 8, 2013, this Court granted GCSD's application for confirmation of that award.  *See Grand Canyon Skywalk Dev., Co. v. 'Sa' Nyu Wa, Inc.*, No. 3:12-cv-08183-DGC, Doc. 22 (Feb. 8, 2013).  The Court found that SNW had waived its sovereign immunity and consented to binding arbitration, including an award of money damages, in the 2003 Agreement, and that the Tribe's exercise of eminent domain did not extend to the taking of GCSD's right to arbitrate or right to money damages on its already-accrued breach of contract claims.  *Id.*

On February 27, 2013, the Tribe designated another tribal entity, Grand Canyon Resort Corporation ("GCRC"), to take over operational control of the Skywalk and made all SNW employees GCRC employees.  Doc. 18, ¶ 39.  SNW filed for bankruptcy on March 4, 2013.  *Id.*, ¶ 40.  Counsel for the Tribe and SNW had represented to this Court at a hearing on February 24, 2012 that revenues from the Skywalk were being placed into escrow pending resolution of the eminent domain action in the Tribal Court.  *Id.*, ¶ 41; *see* Doc. 1-2 at 63-64.  On December 13, 2012, however, the chief financial officer for the Tribe testified at deposition that $2 million in net profits from the Skywalk had been

transferred to the Tribe.  *Id.*, *see* Doc. 1-2 at 71-72.

GCSD now seeks to compel arbitration against the Tribe and the named Tribal Council members as to the following: (1) the value of GCSD's contract rights on the date of the Tribe's taking, (2) whether the Tribe may take GCSD's contract rights as a way to avoid the contract remedies set forth in the 2003 Agreement, and (3) whether the Tribe's use of its eminent domain ordinance to take GCSD's contract rights violates the Hualapai and United States Constitutions.  Doc. 18, ¶ 51.  The Complaint also asks the Court to retain jurisdiction to enforce any judgment awarded in arbitration.  *Id.*, ¶ 52.

GCSD filed two prior actions naming tribal entities and/or Tribal Council members.  The first, *Grand Canyon Skywalk Dev., LLC v. Vaughn ("GCSD I")*, No. 3:11-cv-08048-DGC, filed on March 30, 2011, sought to enjoin the Tribal Council from passing the proposed eminent domain ordinance.  The second, *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa ("GCSD II")* No. 3:12-cv-08030-DGC, filed on February 16, 2012, after the Tribe's purported taking, sought to enjoin SNW and several named Tribal Council members from enforcing the condemnation on the grounds that doing so was an illegal taking of GCSD's contractual rights.  The Court dismissed *GCSD I* and stayed *GCSD II*, finding in both actions that comity required GCSD to exhaust its remedies in tribal court and that GCSD had not shown that it met any of the recognized exceptions to the exhaustion requirement.  The Ninth Circuit has since affirmed the Court's exhaustion ruling.  *See Grand Canyon Skywalk Dev., LLC v. Vaughn*, 715 F.3d 1196 (9th Cir. 2013).

Defendants argue that this action should be dismissed for several reasons: (1) the Court lacks subject-matter jurisdiction because there is no diversity of citizenship between an out-of-state corporation and an Indian Tribe, and there is no federal question involved in the underlying dispute; (2) the Tribe has not waived its sovereign immunity for the purpose of arbitrating disputes with GCSD arising from its exercise of eminent domain; (3) the Tribe's eminent domain action does not arise out of the 2003 Agreement, and the Tribe is not bound by that agreement's arbitration provision; (4) GCSD has waived any ability to compel arbitration with the Tribe regarding its exercise of eminent

1   domain based on its extensive litigation against the Tribe on that issue in federal and

2   tribal court; (5) GCSD's challenge to the constitutionality of the Tribe's eminent domain

3   ordinance implicates issues of tribal law that must be, and have been, brought in Tribal

4   Court; and (6) the Tribal Council members are not proper parties to this action.

5   **II.     Motion to Dismiss Legal Standards.**

6        **A.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction.**

7        "The party asserting jurisdiction has the burden of proving all jurisdictional facts."

8   *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt*

9   *v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see Fenton v. Freedman*,

10  748 F.2d 1358, 1359, n.1 (9th Cir. 1994).  The Court has subject matter jurisdiction over

11  cases involving federal questions pursuant to 28 U.S.C. § 1331, which provides that

12  "[t]he district courts shall have original jurisdiction of all civil actions arising under the

13  Constitution, laws, or treaties of the United States."  The Court has diversity jurisdiction

14  over cases between citizens of different states involving claims greater than $75,000

15  pursuant to 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original

16  jurisdiction of all civil actions where the matter in controversy exceeds the sum or value

17  of $75,000, exclusive of interest and costs, and is between . . . citizens of different

18  States."  28 U.S.C. § 1332(a)(1).  Section 1332 requires complete diversity between the

19  parties.  *See, e.g., Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  In other words, the

20  citizenship of each plaintiff must be diverse from the citizenship of each defendant.

21       **B.     Rule 12(b)(6): Failure to State a Claim.**

22       When analyzing a complaint for failure to state a claim under Rule 12(b)(6), all

23  allegations of material fact are taken as true and construed in the light most favorable to

24  the non-moving party.  *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  To avoid a

25  Rule 12(b)(6) dismissal, the complaint "must plead 'enough facts to state a claim to relief

26  that is plausible on its face.'"  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022

27  (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

28  Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks

sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).

## III.    Defendants' Motion to Dismiss.

### A.    Subject-Matter Jurisdiction.

GCSD's complaint alleges that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Doc. 18, ¶ 15.  Defendants correctly argue on the basis of *American Vantage Cos., v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002), that diversity jurisdiction does not apply to an action between a state-chartered corporation and an unincorporated Indian tribe because an unincorporated Indian tribe is not a citizen of any state within the meaning of § 1332(a)(1).  Doc. 19 at 3.  GCSD's inclusion of Tribal Council members does not cure this jurisdictional defect.  "[N]otwithstanding the joinder of other diverse parties, the presence of an Indian tribe destroys complete diversity."  *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 27 (1st Cir. 2000); *c.f. Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829-30 (1989) (finding the presence of one "stateless" defendant who was a U.S. citizen but nonetheless not a citizen of any state a "jurisdictional spoiler" that destroyed complete diversity).

GCSD's complaint does not identify federal question jurisdiction as a basis for this Court's jurisdiction.  *See* Doc. 18, ¶ 15.  GCSD suggests in its response that the Court could grant leave to amend the complaint to plead federal question jurisdiction because "federal questions inform the entire action" and appear both on the face of its Amended Complaint and on the contested Complaint in Condemnation that the Tribe filed in Tribal Court.  Doc. 21 at 15, n.14.  GCSD specifically argues that the condemnation action raises questions regarding the Tribe's authority to exercise civil jurisdiction over non-Indians, an issue that courts have recognized as establishing federal question jurisdiction under § 1331.  *See Nat'l Farmers Union Ins. v. Crow Tribe of Indians*, 471 U.S. 845, 853

(1985); *Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1473-75 (9th Cir. 1989)).

Leave to amend is unnecessary.  Even if the Court would have federal question jurisdiction on the basis GCSD asserts, exhaustion principles would apply, making amendment futile.  *National Farmers* held that even where the issue of a Tribe's jurisdiction over non-Indians creates a federal question, examination of the relevant jurisdictional factors "should be conducted in the first instance in the Tribal Court."  471 U.S. at 855-56; *see also Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.3d 1221, 1228 (9th Cir. 1989) (exhaustion principles apply "even if the [tribal court's] jurisdiction is concurrent with the federal judiciary.").  This Court relied on *National Farmers* in its two previous orders dismissing and staying GCSD's challenge to the Tribe's exercise of eminent domain and requiring GCSD to exhaust its remedies in the Tribal Court.  The Tribal Court currently has jurisdiction over these matters, and where the applicability of an arbitration clause is at issue, the federal policy favoring arbitration does not trump the policy of comity requiring exhaustion.  *Stock W.*, 873 F.2d at 1228 n.16.

GCSD argues that it has exhausted its remedies on the takings issue and that the Tribal Court has ordered the parties to pursue at least the valuation portion of the Tribe's taking in arbitration.  Doc. 21 at 3-7, 9-15, 17, 18.  GCSD bases this argument on one sentence in a four-sentence minute entry from Judge King dated March 5, 2013, which states: "Upon review of recent filings, the Court finds that the parties will pursue contract remedies in Federal Court."  Doc. 18-1 at 3.  GCSD asserts that the unidentified "recent filings" are the briefs the parties submitted in response to the Tribal Court's August 3, 2012 order directing the parties to address, in part, whether a contract right is subject to government taking or contract remedies when the parties are a Tribe and a private party. Doc. 21 at 9; *see* August 3, 2012 Minute Entry and Order at 5, Doc. 21-3 at 7.  GCSD argues that Judge King's March 5, 2013 order finding that the parties "will pursue contract remedies in Federal Court" shows that he agreed with the position in GCSD's briefs that arbitration was the appropriate remedy for resolving the value of its contract

1   interests for purposes of just compensation.  Doc. 21 at 9-10; Doc. 21-3 at 3-38.

2          Defendants argue that these briefs, filed on August 24, 2012 and November 26,

3   2012, were in no way "recent filings" at the time Judge King issued his March 5, 2013

4   order, and that Judge King was referring instead to GCSD's application before this Court

5   to confirm the award in arbitration against SNW, which the Court granted on

6   February 11, 2013, and SNW's highly publicized bankruptcy filing on March 4, 2012,

7   which would require GCSD to pursue its arbitration award in bankruptcy court.  Doc. 29

8   at 2-3.

9          Regardless of which set of "recent filings" Judge King had in mind, the Court

10  cannot accept GCSD's broad reading of his brief minute entry.  The minute entry engages

11  in no analysis of the challenging issues before the Tribal Court, and does not say that

12  Judge King has concluded that the parties should pursue eminent domain issues in

13  arbitration.  What is more, Judge King issued another minute entry on June 28, 2013,

14  ordering the parties to update the Tribal Court as to "matters that are proceeding either

15  through arbitration, Federal District court, or any other court related to this matter."  *See*

16  Doc. 44-1 at 2.[3]  The order went on to direct the parties to submit a revised discovery and

17  trial schedule.  *Id.*   Judge King's intent to proceed with discovery and trial is not

18  consistent with GCSD argument that he has concluded that Defendants must arbitrate the

19  issues before him.  The Court cannot conclude, on this spare record, that GCSD has

20  exhausted its remedies in Tribal Court.  As a result, exhaustion is still required and

21  amendment of GCSD's complaint to add a federal question would not result in this Court

22  exercising jurisdiction.[4]

---

23

24          [3] The Court may take judicial notice of another court's opinion for purposes of a
    Rule 12(b)(6) motion to dismiss "'not for the truth of the facts recited therein, but for the
25  existence of the opinion, which is not subject to reasonable dispute over its authenticity.'"
    *Lee v. City of L.A.,* 250 F.3d 668, 689-90 (9th Cir. 2001) (quoting *S. Cross Overseas*
26  *Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d. Cr. 1999)).

27          [4] GCSD asserts that, barring federal question jurisdiction, it is willing to dismiss
    the Tribe to preserve complete diversity if the Court were to find that proceeding against
28  only the Tribal Council members would afford it complete relief.  Doc. 21 at 17-18.
    Because the Court finds in this order that Tribal Council members are not proper
    defendants in this action, granting such an amendment would also be futile.

**B.      Sovereign Immunity.**

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  Tribal sovereign immunity extends to tribal employees "acting in their official capacity and within the scope of their authority."  *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008).  Indian tribes may not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress.  *See Burlington N. R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992).  A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."  *Santa Clara Pueblo*, 436 U.S. at 58 (internal quotation marks and citations omitted).  Waivers of sovereign immunity must be "strictly construed" and not enlarged beyond what the express language requires. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992).

Defendants argue, and GCSD does not dispute, that they have sovereign immunity, and that Article XVI, Section 1, of the Hualapai Tribe's Constitution protects the Tribe, Tribal Council members, economic arms of the Tribe, and all tribal officials acting in their official capacities and within the scope of their authority from suit "except to the extent that the Tribal Council expressly waives sovereign immunity."  Doc. 19 at 4. Defendants argue that the Tribe has not waived its sovereign immunity.  *Id.*

### 1.      The Hualapai Tribe.

GCSD argues that because the procedures the Tribe must follow for waiving its sovereign immunity are at least in part a question of Hualapai law, the Tribal Court has the interest and authority to resolve whether the Tribe waived its sovereign immunity. Doc. 21 at 14.  It further argues on the basis of the Tribal Court's March 5, 2013 minute entry that the Tribal Court has already applied standard contract principles and resolved the issue under Hualapai law in favor of waiver, and that the Tribe cannot seek a do-over here.  *Id.*  For the reasons already discussed, the Court rejects GCSD's overly-expansive interpretation of the Tribal Court's March 5, 2013 minute entry.

1    GCSD alleges that the Tribe is a third-party beneficiary to the 2003 Agreement
2    and as such is bound by all of its provisions, including its mandatory arbitration and
3    waiver of sovereign immunity.  Doc. 18, ¶¶ 21, 42-43; 48-40.  *See, e.g.*, *Arthur Andersen*
4    *LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (finding that contract provisions apply to third
5    party beneficiaries where they are enforceable by or against the third party under state
6    contract law).  The complaint cites to § 15.4(a) of the Agreement, which states that "[a]ny
7    controversy, claim or dispute arising out of or related to this Agreement shall be resolved
8    through binding arbitration."  Doc. 18, ¶ 21; *see* Doc. 18-1 at 46.  The complaint notably
9    omits § 15.4(d), titled "Limited Waiver of Sovereign Immunity," which states that "SNW
10   expressly waives its sovereign immunity with respect to all disputes arising out of this
11   Agreement to the extent permitted under the Constitution of the Nation," but also makes
12   clear that "[a]ny money damages will be limited to the assets that are solely owned by
13   SNW.  *No money damages, awards, fines, fees, costs or expenses can be brought or*
14   *awarded against the Nation in arbitration, judicial, or governmental agency action*."  *Id.*
15   at § 15.4(d)(ii) (emphasis added).

16        The Tribe concedes that it is a third-party beneficiary of the contract provisions
17   "intended for its benefit," but argues that the arbitration provision could not be intended
18   for its benefit in this case.  Doc. 19 at 6 n.3 (quoting the 2003 Agreement § 15.3;
19   Doc. 18-1 at 42).  This is because attempting to resolve the value of GCSD's condemned
20   contract rights through arbitration would necessarily conflict with the provision that no
21   money damages be brought or awarded against the Nation.  *Id.*  Submitting this issue to
22   arbitration would thus be contrary to securing payment of just compensation in Tribal
23   Court, a prerequisite to consummating the condemnation, as the Tribe has already sought
24   to do in Tribal Court.  *Id.*[5]

25
26        [5] The Tribe acknowledges that it has waived its sovereign immunity to determine
     just compensation in the Tribal Court through its conduct of filing the condemnation
     action there, but it correctly asserts that this waiver does not extend to other forums or for
27   other purposes.  Doc. 19 at 4-5.  *See, e.g.*, *Vann v. Salazar*, 883 F. Supp. 2d 44, 53
     (D.D.C. 2011), *rev'd on other grounds*, 701 F.3d 927 (D.C. Cir. 2012) ("it is settled law
28   that a waiver of sovereign immunity in one forum does not effect a waiver in other
     forums" because a sovereign's "interest in immunity encompasses not merely *whether* it

1    At best, GCSD's third-party beneficiary argument asserts a theory of implied
2    waiver – that the Tribe impliedly waived its sovereign immunity by allowing itself to
3    become a beneficiary of the 2003 Agreement.  This argument fails as a matter of law.  As
4    noted above, waivers of sovereign immunity "cannot be implied but must be
5    unequivocally expressed."  *Santa Clara Pueblo*, 436 U.S. at 58; *see also Nordic Vill.*, 503
6    U.S. at 34 (same).  Indeed, the Supreme Court has held that merely entering into a
7    commercial contract does not constitute a waiver of sovereign powers.  *See Merrion v.*
8    *Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) ("To presume that a sovereign forever
9    waives the right to exercise one of its sovereign powers unless it expressly reserves the
10   right to exercise that power in a commercial agreement turns the concept of sovereignty
11   on its head.").

12   Moreover, the 2003 Agreement exempts "the Nation" from any "money damages,
13   awards, fines, fees, costs or expenses."  2003 Agreement, § 15.4(d)(2), Doc. 18-1 at 46.
14   GCSD argues with little persuasive force that this language does not include an award of
15   "just compensation" against the Tribe for the taking of GCSD's property.  Doc. 21 at 19.
16   GCSD relies in part on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), which
17   distinguishes between money damages awarded as compensation for one's harms or
18   losses and specific performance in the form of money, which can be awarded as equitable
19   relief where money damages are not otherwise permitted.  But *Bowe*n does not address
20   whether "just compensation" for a government taking would be an award of money
21   damages or an award of equitable relief.  And to the extent it applies at all, *Bowen* would
22   suggest that compensation for a taking, as for any other loss or harm, constitutes an
23   award of damages, except where the amount of compensation has been predetermined
24   and can be equitably enforced.  The amount to be awarded GCSD for a taking of its
25   property has not been predetermined.

26   The Court finds the Tribe's express exemption from "money damages, awards,
27
28   may be sued, but *where* it may be sued" (citations omitted, emphasis in original)).

1    fines, fees, costs or expenses" to be sufficiently broad to preclude an action against the

2    Tribe to recover just compensation.  As the Court found in its prior order, SNW waived

3    its sovereign immunity for suits seeking money damages, but no such waiver was made

4    for claims against the Tribe.  *Grand Canyon Skywalk Dev., Co. v. 'Sa' Nyu Wa, Inc.*, No.

5    3:12-cv-08183-DGC, Doc. 22 at 10.

6                    **2.    Tribal Council Members.**

7          GCSD argues that the individual Tribal Council members cannot claim sovereign

8    immunity because, under the doctrine of *Ex Parte Young*, they can be sued for

9    prospective relief where they take actions in their official capacities that are illegal,

10   beyond the scope of their authority, or in violation of federal law.  Doc. 21 at 23 (*citing,*

11   *e.g.*, *Ex Parte Young*, 209 U.S. 123, 159 (1908)); *Arizona Pub. Serv. Co. v. Aspaas*, 77

12   F.3d 1128, 1133-34 (9th Cir. 1995) ("Tribal sovereign immunity . . . does not bar a suit

13   for prospective relief against tribal officers allegedly acting in violation of federal law.").

14         It is unclear from the complaint what if any actions GCSD alleges the Tribal

15   Council members took that were outside the scope of their authority or contrary to law.

16   GCSD presents shifting reasons in its response for naming these individuals.  It first

17   asserts that Tribal Council members serve as *de facto* board members of GCRC and any

18   tribal enterprise now alleged to hold any rights under the 2003 Agreement, and that it

19   included them in order to require all such entities to arbitrate in good faith and refrain

20   from dissipating GCRC's assets.  Doc. 21 at 4.  Even if GCRC is arguably subject to the

21   arbitration provision in the 2003 Agreement as the successor-in-interest to SNW (an issue

22   the Court need not decide), GCSD did not name GCRC in its complaint, and its claims

23   for relief do not concern the actions of GCRC but the condemnation action of the Tribe.

24   The complaint also does not allege that any of the named Tribal Council members are

25   currently or ever were on the board of GCRC or any other tribal entity, or even that

26   Tribal Council members generally serve in that capacity.  Nor does it allege any facts

27   from which the Court can infer that the named Tribal Council members acted beyond the

28   scope of their authority either in their role as Tribal Council members or as *de facto* board

members.

GCSD relies in part on allegations made in prior proceedings to show both that Tribal Council members were involved in the Tribe's taking of its contract rights and tortuously interfered with the previous arbitration proceedings against SNW. Doc. 21 at 23-24. Not only are these allegations not in the complaint, but the prospective relief GCSD seeks in the complaint – that the Tribe and Tribal Council members be compelled to arbitrate claims related to the Tribe's taking of its contract rights – is utterly detached from the rationale GCSD puts forth in its response, which is that Tribal Council members and the Tribal enterprises they control should be made to arbitrate potential claims against those entities: GCSD "seeks prospective relief requiring [Tribal Council members] to participate in good faith in the arbitration, to allow the businesses they control to participate in binding arbitration, and not to use the combination of their control over GCRC and the sovereign immunity of their tribal treasury to commit fraud by transferring assets with 'actual intent to hinder, delay or defraud any creditor,' A.R.S. § 44-1004, as they have in the recent past." Doc. 21 at 24; *see also* Doc. 21 at 26 ("GCSD seeks to compel Defendants to arbitrate in their official capacities, so that their actions on behalf [of] whatever Tribal enterprise they allege stands in the shoes of SNW, and that they control, may be scrutinized in the proper forum – arbitration.").

The allegations that GCSD relies on in the complaint to show illegal government action also fail to persuade the Court that Tribal Council members are proper defendants in this action. *See* Doc. 21 at 24-25. The two paragraphs to which GCSD refers allege that in order to keep SNW from having to comply with a crucial point-of-sale discovery request during arbitration, "the Tribe passed a taking resolution and filed an action in Tribal Court to seize control of GCSD's intangible contract rights," and "[t]he Tribe's purported 'taking' egregiously violated GCSD's constitutional rights." Doc. 18, ¶¶ 30, 35. Defendants argue, and GCSD does not dispute, that to the extent the complaint names Tribal Council members for their role in passing the takings ordinance and resolution, they have legislative immunity. Doc. 21 at 24; *see, e.g.*, *Bogan v. Scott-*

1    *Harris*, 523 U.S. 44, 54 (1998) ("Absolute legislative immunity attaches to all actions

2    taken 'in the sphere of legitimate legislative activity[,]'" and "[w]hether an act is

3    legislative turns on the nature of the act, rather than on the motive or intent of the official

4    performing it.") (internal citation omitted); *Sable v. Myers*, 563 F.3d 1120, 1123-27

5    (10th Cir. 2009) (applying legislative immunity to actions of City Council members

6    approving a condemnation action).[6]

7         To the extent that GCSD is attempting to get around the Tribe's sovereign

8    immunity by naming Tribal Council members without alleging any specific connection

9    between these individuals and the Tribe's alleged improper acts, the attempt is

10   impermissible.  As stated in *Ex Parte Young*, "[i]n making an officer of the state a party

11   defendant in a suit to enjoin the enforcement of an act . . . it is plain that such officer must

12   have some connection with the enforcement of the act, or else it is merely making him a

13   party as a representative of the state, and thereby attempting to make the state a party."

14   209 U.S. at 157.  GCSD asserts that each of the named Tribal Council Defendants "had,

15   at the very least, 'some connection with the enforcement of the [unconstitutional] act'"

16   (Doc. 21 at 25-26 (quoting *Ex Parte Young*, 209 U.S. at 157)), but, as noted above, the

17   complaint fails to allege any facts from which the Court can make this inference.

18        Finally, even if the Court were to determine that GCSD had alleged sufficient facts

19   from which to infer that the Tribal Council members acted outside the scope of their legal

20   authority and are thereby subject to suit under *Ex Parte Young*, this would only mean that

21   they are subject to suit in the appropriate court for purposes of prospective relief relative

22   to their alleged unlawful actions.  *See Ulaleo v. Paty*, 902 F.2d 1395, 1398-1400 (9th Cir.

23   _____

24        [6] GCSD attempts to distinguish *Sable* because it involved a suit against legislators
     for money damages, not, as here, to compel arbitration.  Doc. 21 at 24-25.  But *Sable* also
25   cites to the "broad sweep" of legislative immunity, 563 F.3d at 1126 (citing *Nat'l Ass'n
     of Soc. Workers v. Harwood*, 69 F.3d 622, 634 (1st Cir. 1995)), and its holding does not
26   appear to hinge on the nature of the requested relief.  Moreover, the Supreme Court has
     reasoned in applying the legislative immunity doctrine that "a private civil action,
27   *whether for an injunction or damages*, creates a distraction and forces legislators to divert
     their time, energy, and attention from their legislative tasks to defend the litigation."  *Sup.
28   Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 733 (1980) (brackets and
     citation omitted) (emphasis added).

1990).  It would not mean, as GCSD argues, that they are brought into the scope of the 2003 Agreement and are *de facto* bound by its arbitration provisions where they are neither parties nor third-party beneficiaries to that agreement.  The only theory GCSD asserts that would plausibly subject Tribal Council members to the binding arbitration provisions of the 2003 Agreement is their purported role as board members of SNW's successor corporation GCRC.  But as discussed above, GCSD has not sought to compel arbitration to resolve claims against GCRC, but has sought to compel arbitration on valuation and other issues related to the taking of its contract rights – issues for which it specifically seeks monetary relief from the Tribe.  To the extent that GCSD invokes *Ex Parte Young* as an attempt to get the Tribe, via its Tribal Council representatives, to submit to arbitration for an award of money damages under the 2003 Agreement, this attempt fails because the Tribe has never waived its sovereign immunity for this purpose.

In summary, the shifting theories GCSD puts forth for compelling Tribal Council members to arbitrate claims related to the Tribe's taking of GCSD's contract rights fail to show that Tribal Council members are properly named as defendants in this action.  Naming Tribal Council members affords no basis for compelling the Tribe to arbitrate the takings issues which are now pending in Tribal Court.

### C.  Other Issues.

Because the Tribe has not waived its sovereign immunity, and therefore cannot be compelled to arbitrate the issue of just compensation, the Court need not resolve several issues raised by Defendants.  These include Defendants' assertion that the condemnation action does not constitute a claim, controversy, or dispute "arising out of or related to [2003] Agreement" (Doc. 18-1 at 42), and the argument that GCSD has waived its right to arbitrate by pursuing litigation in this Court and the Tribal Court (Doc. 19 at 11).

### D.  The Constitutional Question.

In addition to seeking arbitration on the value of its contract rights at the time of the taking, GCSD seeks to arbitrate the constitutionality of the Tribe's use of its condemnation ordinance.  Doc. 18, ¶ 51.  The complaint requests that "[i]n the event this

Court does not compel the issue of the Ordinance's constitutionality to arbitration . . . the Court declare from which court, tribunal or forum Plaintiffs may properly seek such a determination." *Id.*, ¶ 53.  As previously noted, the Court has already stayed GCSD's action on this issue and ruled that GCSD must exhaust its remedies in Tribal Court. Nothing in the current action changes this analysis. *See Burlington N. R.R.*, 940 F.2d at 1245-46 (finding where "[t]he policy of tribal self-government and self-determination goes to the heart of th[e] case.  . . . the Crow Tribe must itself first interpret its own ordinance and define its own jurisdiction.").

**E.   Delay.**

GCSD asserts that justice delayed is justice denied.  Doc. 21 at 1.  It complains that nearly 18 months have passed since the Tribe condemned its contract rights and took over Skywalk operations, and yet GCSD has not been paid any compensation.  *Id.* at 5; Doc. 18, ¶ 53 n.4.  It further asserts that Defendants have thus far resisted prompt resolution of this issue in any court.  Doc. 21 at 5.  This assertion appears to be based on the Tribe's opposition to the actions GCSD filed in this Court, and the Tribe's purported failure to comply with what GCSD mischaracterizes as the Tribal Court's "direct charge" that the parties resolve at least the valuation portion of the condemnation action by arbitration.  *Id.*

As discussed above, the Court does not find that the Tribal Court has ordered the parties to arbitrate or that GCSD has exhausted its remedies in Tribal Court.  Nor does the Court find that the proceedings in Tribal Court have stalled.  The Tribal Court's June 28, 2013 minute entry requesting that the parties submit a revised discovery and trial schedule indicates the opposite.  Although the Court is mindful that GCSD suffers harm while it awaits compensation for its condemned contract rights, this does not give the Court grounds to compel arbitration against the Tribe where GCSD has not shown that the Tribe is bound to arbitrate any money awards against it under the 2003 Agreement, where that agreement expressly exempts the Tribe from doing so, and where the Tribe has already waived its sovereign immunity for this purpose in the Hualapai Tribal Court –

1  the same court where GCSD was directed to exhaust its remedies.

2       In its prior attempt to have the takings issue heard in this Court (*GCSD II*), GCSD

3  vigorously litigated each of the exceptions to tribal court exhaustion.    Following

4  extensive briefing and oral argument, the Court concluded that none of these exceptions

5  applied.  GCSD appealed this finding, and the Ninth Circuit affirmed.  GCSD appears to

6  have done more to delay resolution of the condemnation action than Defendants.

7  **IV.     Defendants' Motion to Disqualify Counsel and for Protective Orders.**

8       Defendants filed a motion requesting the disqualification of GCSD's counsel on

9  the grounds that GT has repeatedly violated Ethical Rules 4.2 and 4.4.   Doc. 25.

10  Defendants allege that GCSD founder David Jin and GT counsel held *ex parte*

11  communications with Tribal Council members in early 2011 and 2012, knowing they

12  were represented by the Tribe's counsel Gallagher & Kennedy ("G&K").   *Id.* at 3-5.

13  They also allege that from at least March 2012 GT has consistently and against G&K's

14  express opposition used two confidential and privileged legal memoranda, dated

15  February 8 and February 11, 2011, that G&K furnished to each Tribal Council member.

16  *Id.* at 5-6.  Defendants move the Court to disqualify GT from representing GCSD in this

17  case and in *GCSD II* (which remains stayed in this Court), as well as in any other related

18  future proceedings in the District of Arizona.  Doc. 25 at 14.  They further request that

19  the Court issue a series of protective orders to mitigate the effect of GT's alleged

20  misconduct.  *Id.* at 14-15.

21       The Court has reviewed the memoranda of both parties and concludes that

22  Defendants have not met the high threshold for showing that GT must be disqualified.

23  *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)

24  (noting that due to their potential for abuse, disqualification motions should be subjected

25  to "strict scrutiny.") (internal quotations and citation omitted); *Freeman v. Chi. Musical*

26  *Instrument Co.*, 689 F.2d715, 721 (7th Cir. 1982) ("disqualification, as a prophylactic

27  device for protecting the attorney-client relationship, is a drastic measure which courts

28  should hesitate to impose except when absolutely necessary.").  The Court takes judicial

notice of the public availability of G&K's February 8 and February 11, 2011 memoranda, including as attachments to a February 29, 2012 open letter to Hualapai Tribal Members from Tribal Council Member Sheri Yellowhawk, currently available on a publicly accessible website (*see* http://turtletalk.files.wordpress.com/2012/ 03/02-29-2012-letter-from-sheri-yellowhawk.pdf).   As here, "[a]n express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).  The Court also notes that Defendants' motion post-dates GT's allegedly improper acts by at least a year and four months, and is therefore untimely.  *See, e.g., Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."). Further, the Court finds that Defendants' requests for protective orders, such as the ability to conduct discovery as to what improper *ex parte* communications GT or GCSD previously had with members of the Tribal Council, is not warranted at this late stage, particularly in light of the Court's dismissal of this action and its stay of the only remaining action (*GCSD II*).

**IT IS ORDERED:**

1.      Defendants the Hualapai Indian Tribe's and Members of the Hualapai Tribal Council's motion to dismiss (Doc. 19) is **granted**.

2.      Plaintiff GCSD's first amended complaint (Doc. 18) is **dismissed with prejudice**.

3.      Defendants' motion to disqualify Greenberg Traurig as Counsel for GCSD and for Related Orders Protecting the Tribe's Confidential Information (Doc. 25) is **denied**.

1        4.       The Clerk of the Court is directed to **terminate this action**.

2      Dated this 19th day of August, 2013.

_____

David G. Campbell
United States District Judge